IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

|  |  |
|---|---|
| UBS FINANCIAL SERVICES, INC., | * |
| Plaintiff, | * |
| v. | *   CIVIL NO.: WDQ-14-3721 |
| GARY T. PADUSSIS, | * |
| Defendant. | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM OPINION

UBS Financial Services, Inc. ("UBSFS") petitioned the Court to vacate an arbitration award issued in connection with an arbitration brought pursuant to the Financial Industry Regulatory Authority, Inc. ("FINRA") Dispute Resolution Program. ECF Nos. 1, 12.  Treating UBSFS's petition as a motion to vacate the arbitration award,[1] Padussis cross-moved to confirm the award.  ECF No. 22.[2]  Also pending is UBSFS's motion to seal. ECF No. 3.  No hearing is necessary.  Local Rule 105.6 (D. Md. 2014).  For the following reasons, UBSFS's motion to vacate will be denied, Padussis's motion to confirm will be granted, and UBSFS's motion to seal will be granted.

---

[1] The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, provides for motions to vacate or confirm arbitration awards. *See* 9 U.S.C. §§ 12-13 (2012).

[2] UBSFS agreed to treat its petition as a motion.  ECF No. 28 at 1.

I.   Background

   A.   Facts[3]

      1.   The Parties and the Dispute

UBSFS is a financial services firm and member of the
Financial Industry Regulatory Authority ("FINRA").   ECF No. 12 ¶
6.   Padussis is a financial advisor licensed in several
jurisdictions to buy and sell securities, and is a registered
FINRA representative.   *Id.* ¶ 7.   Certain disputes between
Padussis and FINRA members are resolved pursuant to arbitration
under FINRA's Code of Arbitration Procedures for Industry
Disputes (the "Code" or the "FINRA Code").   *Id.*[4]
From January 7, 2009 to April 12, 2013, Padussis worked for
UBSFS as Senior Vice President for Investments.   *Id.* ¶ 8; Pl.
Ex. B, #1 ¶ 1.   At the start of his employment, UBSFS lent
Padussis $2,726,602.24.   ECF No. 12 ¶ 9.[5]   Padussis gave UBSFS a
promissory note (the "Note") for the loan amount, which provided
that any outstanding amount would immediately become due and
payable upon the end of Padussis's employment with UBSFS.   Pl.

_____

[3] The facts are from the parties' cross-motions and exhibits.
Attachments to the exhibits will be cited as, *e.g.*, Pl. Ex. A,
#A, or Def. Ex. 1, #A.   When attachments to the exhibits contain
several documents, they will be identified by title.

[4] The Code is codified as FINRA Rules 13100 *et seq.* (2013).   ECF
No. 12 ¶ 15; Pl. Ex. F; Def. Ex's 8-20.

[5] The Note provided for nine annual payments, but that UBSFS
could offset each payment "from . . . compensation payable to
[Padussis]."   Pl. Ex. 1, #A at 1; Pl. Ex. 3, #1 at 6.

Ex. A, #A at 2.  The Note further provided for UBSFS's recovery of attorneys' fees "[i]n the event that any arbitration . . . is brought against [Padussis] to collect" on the Note.  Pl. Ex. A, #A at 2.[6]  Padussis also executed a Letter of Understanding governing his compensation and related matters and a Financial Advisor Team Agreement ("Team Agreement") governing "the rights and obligations" of Team Members with whom Padussis worked.  Pl. Ex. B, #1-2; Def. Ex's 6-7.[7]

At some time,[8] Padussis resigned from UBSFS; at that time, he owed $1,575,048.22 in principal, interest, attorneys' fees, and costs under the Note.  ECF No. 12 ¶ 10; Pl. Ex. A ¶ 1. On June 3, 2013, after Padussis did not pay the Note balance, UBSFS commenced arbitration against Padussis with FINRA Dispute Resolution, Inc.  See Pl. Ex. A.  On July 31, 2013, Padussis counterclaimed for breach of contract and other common law claims.  Pl. Ex. B.  In connection with the arbitration, the parties executed a Uniform Submission Agreement ("USA").  ECF

---

[6] The Note contained a choice-of-law provision stating that disputes about the Note would be governed by New Jersey arbitration law, and that arbitration would be conducted under "the auspices and rules" of FINRA.  Pl. Ex. A, #A at 3.

[7] The Letter of Understanding and Team Agreement also provided for arbitration of all disputes by FINRA, but did not provide for the application of a particular state's substantive or arbitration law.  ECF No. 29 at 2; Def. Ex. 6 ¶ 16; Def. Ex. 7 ¶ 17.

[8] The date is not in the record.

No. 12 ¶ 14; Pl. Ex. E.  Under the USA, the parties agreed to arbitrate all matters--including those in the claim, answers, and counterclaims--"in accordance with FINRA By-Laws, Rules, and Code of Arbitration Procedure."  Pl. Ex. E at 1.[9]

2.    Applicable FINRA Rules

For disputes involving more than $100,000, the arbitration panel will consist of three arbitrators; one non-public arbitrator and two public arbitrators.  FINRA Rules 13401(c), 13402(d) (hereinafter "Rule(s)").  In 2013, FINRA defined a "non-public arbitrator" as "a person who is otherwise qualified to serve as an arbitrator" and "is or, within the past five years, was . . . associated with, including registered through,

---

[9] The parties also executed stipulations regarding the confidentiality of regulatorily protected customer information and discovery produced during arbitration.  ECF No. 16-1.  One of the agreements stated that the parties could designate portions of the transcript as confidential within 30 days after the hearing concluded, and for the first 30 days following a hearing, the transcript was presumptively confidential.  *Id.* at 6-7.  Arbitrators made clear that an order of confidentiality applied to everything said during the proceedings and all documents produced.  ECF No. 27 at 3 n.1 (quoting portions of the arbitral transcript).

Under FINRA's guidelines, as of January 2015, only parties could request copies of pleadings, exhibits, or a digital or stenographic record of arbitral proceedings.  ECF No. 27-1 at 2 (FINRA Administrative Frequently Asked Questions ("FAQs")).  In February 2015, FINRA amended its FAQs to permit parties or their counsel to "disclose details of their own proceeding as they see fit," but retained provisions barring public disclosure of documents and digital or stenographic records.  ECF No. 30-2 (revised FINRA Administrative FAQs).

a broker or a dealer (including a government securities broker or dealer or a municipal securities dealer)." Rule 13100(p)(1)(A).[10]

For the selection of a panel of three arbitrators, FINRA will send lists of potential arbitrators to the parties "within approximately 30 days after the last answer is due." Rule 13403(c)(1). The parties may strike up to four arbitrators and rank the remaining six arbitrators. Rule 13404(a), (c). "The ranked lists must be returned to [FINRA] no more than 20 days after the date upon which [FINRA] sent the lists to the parties." Rule 13404(d).[11] "If [FINRA] does not receive a party's ranked lists within that time, [it] will proceed as though the party did not want to strike any arbitrator or have any preferences among the listed arbitrators." *Id.* "For each arbitrator classification (public, non-public, and chairperson), [FINRA] will prepare combined ranked lists of arbitrators based on the parties' numerical rankings." Rule 13405.

---

[10] FINRA has since revised Rule 13100(p)(1)(A) to remove the five-year time limitation, such that a person "who worked in the financial industry, at any point in their careers, for any duration," would be classified as a non-public arbitrator. FINRA, Regulatory Notice 15-18 (May 2015), http://finra.complinet.com/net_file_store/new_rulebooks/r/e/Regulatory_Notice_15-18.pdf (noting a June 26, 2015 effective date); FINRA Rule 13100(p)(1)(A) (2015).

[11] Parties may agree to extend the deadline for returning arbitrator lists, or, for good cause, FINRA may extend any deadline in the Code. Rule 13207(a),(c).

The "[a]ppointment of arbitrators occurs when [FINRA] sends notice to the parties of the names of the arbitrators on the panel." Rule 13406(d). If an arbitrator is unable to serve, FINRA "will appoint as a replacement arbitrator the arbitrator who is the most highly ranked available arbitrator of the required classification remaining on the [parties'] combined list." Rule 13411(a)-(b). If there are no available arbitrators on the combined list, FINRA "will appoint an arbitrator of the required classification to complete the panel." Rule 13411 (c). However, FINRA may not appoint a non-public arbitrator under subsection (c) "unless the parties agree otherwise." Rule 13411 (d).

FINRA--through its Director--"may exercise discretionary authority and make any decision that is consistent with the purposes of the Code to facilitate the appointment of arbitrators and the resolution of arbitrations." Rule 13412. Additionally, "[t]he panel has the authority to interpret and determine the applicability of all provisions under the Code. Such interpretations are final and binding upon the parties." Rule 13413. After the first hearing begins, arbitrators may be removed by FINRA's Director or President "based *only* on information required to be disclosed under Rule 13408 that was

not previously known by the parties."   Rule 13410 (emphasis added).[12]

### 3.   Arbitration Proceedings and Award

On September 11, 2013, UBSFS received by regular mail a September 3, 2013 letter from FINRA referring to a September 10, 2013 deadline for submitting its ranked list of arbitrators. ECF No. 12 ¶ 24; Pl. Ex. G at 3.   At the time, "UBSFS had not received any proposed list of arbitrators from FINRA . . . or other notice that the arbitrator selection process had begun." ECF No. 12 ¶ 24.   On September 12, 2013, UBSFS contacted FINRA and learned that the September 10, 2013 deadline had been stated in an August 21, 2013 letter to the parties.   Pl. Ex. G at 3; *see also* Def. Ex. 22 (August 21, 2013 letter received by Padussis's counsel).

On September 18, 2013, UBSFS filed an emergency motion for an extension of time to file arbitrator rankings.   Pl. Ex. G at 1.[13]   On October 7, 2013, FINRA summarily denied the motion.   Pl.

---

[12] Rule 13408 requires arbitrators to disclose information that "might preclude the arbitrator from rendering an objective and impartial determination."

[13] UBSFS first sought Padussis's consent for an extension, which was denied.   ECF No. 12 at 8 n.3.

UBSFS attached to the motion affidavits by its attorney, James L. Komie, Esq., and Komie's assistant, Darlene A. Petschauer, stating that they had not received the August 21, 2013 letter. Pl. Ex. G, #A-B.   Padussis opposed UBSFS's motion, and noted that as of August 16, 2013, Komie was no longer handling the

Ex. G, #B (Email from Allison Phillips, FINRA processing and logistical manager). UBSFS appealed the denial. Pl. Ex. G, #B (October 9, 2013 letter of appeal). On October 15, 2013, FINRA denied UBSFS's appeal. Pl. Ex. G, #B (October 15, 2013 letter decision from FINRA to the parties). FINRA reasoned that UBSFS had not shown good cause to merit the extension of time to file its arbitrator rankings; FINRA had mailed the list on August 21, 2013, and the reminder on or about September 3, 2013, and had not received any returned mail. *Id.* at 4.

On October 21, 2013, FINRA informed the parties about its selection of the following arbitrators: Maurice Dunie as public Chair; J. Snowden Stanley as public arbitrator; and Timothy J. Moore as non-public arbitrator. Def. Ex. 21. On July 16, 2014, shortly before arbitration hearings began, FINRA replaced Moore with Ezio Borchini. ECF No. 12 ¶ 29.[14]

---

case and had turned it over to Francis Dee, Esq., at a different law firm. Pl. Ex. G, # B (Padussis's "Reply to Emergency Motion" and attached Exhibit A [email from Komie to Padussis's counsel confirming transfer of the case]). In reply, UBSFS asserted that the list should have been sent to Komie until new counsel entered his appearance on September 24, 2013. Pl. Ex. G, # B (UBSFS's Reply, at 1). Relying on Rule 13403(c), which states that FINRA will mail the list after "the last answer is due," UBSFS further asserted that it had not expected FINRA to mail the list until it answered Padussis's counterclaim, which was due on September 19, 2013. *Id.* at 2.

[14] Hearings were scheduled in July and October 2014. ECF No. 12 ¶ 28; Pl. Ex. 1 at 8.

On July 21, 2014, during the first day of hearings, UBSFS objected to the panel composition on the basis that FINRA had appointed arbitrators without UBSFS's input.  Pl. Ex. J at 16-17.  The panel treated UBSFS's challenge as a motion; after an executive session, the panel denied the motion.  *Id.* at 21-23. That day, UBSFS also inquired whether Borchini was qualified as a non-public arbitrator because it was unclear whether he had worked in the industry within the past five years, as required by Rule 13100(p)(1)(A).  *Id.* at 8-11.  Chairman Dunie called a FINRA representative, who informed him that Borchini qualified as a non-public arbitrator "at least for the next three weeks." *Id.* at 12-13.  The FINRA representative also informed Chairman Dunie that an arbitrator's qualifications for a particular classification were determined at the commencement of the hearings.  ECF No. 12 ¶ 33.

On August 10, 2014, Padussis asked FINRA whether Borchini remained qualified to serve as non-public arbitrator.  Pl. Ex. H.  On September 11, 2014, FINRA issued a letter opinion clarifying that the relevant date for determining an arbitrator's qualifications is the date on which the list of potential arbitrators is generated--in this case, August 21, 2013--and not the date on which hearings began.  Pl. Ex. I at 1. According to FINRA, on August 21, 2013, "Borchini[] was properly classified as a non-public arbitrator."  *Id.*  FINRA further

stated that because Borchini had been "ranked by both parties in this matter," FINRA appointed him as Moore's replacement.  *Id.* at 2.

On October 14, 2014, UBSFS submitted for the panel's consideration its certification of attorneys' fees and expenses. Def. Ex. 26.  UBSFS's counsel explained that because Padussis had raised several counterclaims, "all claims in this case [including UBSFS's breach of promissory note claim] are intertwined."  *Id.* at 3.  Therefore, UBSFS's counsel had been unable to separate the time and expenses incurred in connection with its efforts to enforce the Note from its efforts to defend against the counterclaims.  *Id.*  "In the exercise of billing discretion," UBSFS requested $200,000 in attorneys' fees, which was "a substantial reduction of the actual fees incurred" from the arbitration.  *Id.*[15]

On October 27, 2014, the panel issued its award.  Pl. Ex. 1.[16]  The panel found Padussis liable on the Note and ordered him to pay UBSFS $1,683,262.69.  *Id.* at 6.  The panel found UBSFS liable on Padussis's counterclaim and awarded Padussis $932,887 in compensatory damages.  *Id.* at 7.  Any relief "not

---

[15] UBSFS's fee petition stated the hourly rate for each person involved in the representation, and that it had incurred $297,809.90 in fees and $35,560.44 in costs.  Def. Ex. 26 at 2-3.

[16] *See also* Def. Ex. 4.

specifically addressed" by the panel, including Padussis's
request for punitive damages and the parties' requests for
attorneys' fees, was denied.  *Id.*[17]

B.  Procedural History

On November 26, 2014, UBSFS moved to vacate the arbitration
award, and to seal its exhibits.  ECF Nos. 1, 3.[18]  On December

---

[17] Under FINRA Rule 13904(j), "monetary awards shall be paid
within 30 days of receipt unless a motion to vacate has been
filed with a court of competent jurisdiction."  Failure to honor
an award may be considered a violation of "just and equitable
principles of trade."  Rule IM-13000.

[18] This Court has jurisdiction under 28 U.S.C. § 1332, which
provides that "district courts shall have original jurisdiction
of all civil actions where the matter in controversy exceeds the
sum or value of $75,000, exclusive of interest and costs, and is
between . . . citizens of different States."  More than $75,000
is at issue; UBSFS is a Delaware corporation with its principal
place of business in New Jersey, and Padussis is a citizen of
Maryland.  ECF No. 1 ¶¶ 1-2, 4.

That UBSFS seeks vacatur under the FAA does not create federal
question jurisdiction under 28 U.S.C. § 1331.  *See Hall St.
Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581-82, 128 S.
Ct. 1396, 1402, 170 L. Ed. 2d 254 (2008)("As for jurisdiction
over controversies touching arbitration, the [FAA] does nothing,
being "something of an anomaly in the field of federal-court
jurisdiction" in bestowing no federal jurisdiction but rather
requiring an independent jurisdictional basis.")(*quoting Moses
H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1,
25, n. 32, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)); *Whiteside v.
Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991)("Although it is
an anomaly for a statute that creates federal substantive rights
not to form the basis of federal question jurisdiction, subject
matter jurisdiction for an FAA claim in federal court must rest
on some basis independent of the FAA.").  *But see Crews v. S & S
Serv. Ctr. Inc.*, 848 F. Supp. 2d 595, 598 (E.D. Va.) *aff'd sub
nom. Crews v. S&S Serv. Ctr. Inc.*, 474 F. App'x 370 (4th Cir.
2012)(noting the U.S. Supreme Court's more recent holding in
*Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 749, 181 L. Ed.

8, 2014, UBSFS amended the motion.  ECF No. 12.  On December 19, 2014, Padussis opposed the motion to seal.  ECF No. 16.[19]

On January 6, 2015, Padussis opposed UBSFS's motion to vacate and cross-moved to confirm the award.  ECF No. 22.[20]  On January 28, 2015, UBSFS opposed Padussis's cross-motion.  ECF No. 28.  On February 4, 2015, Padussis replied.  ECF No. 29.  On February 9, 2015, Padussis supplemented his reply.  ECF No. 30.

II. Analysis

A.   Arbitration Award

1.   Legal Standard

"Judicial review of an arbitration award . . . is 'substantially circumscribed.'"  *Three S Del., Inc. v. DataQuick Info. Sys., Inc.*, 492 F.3d 520, 527 (4th Cir. 2007) (quoting

---

2d 881 (2012), that "when federal law creates a private right of action and furnishes the substantive rules of decision, the claim arises under federal law, and district courts possess federal-question jurisdiction under § 1331," but deciding "to follow the Supreme Court's more specific finding that the FAA does not create federal question jurisdiction").

However, venue is appropriate because the arbitration award was issued in Baltimore, Maryland.  *See* 9 U.S.C. § 9 (federal courts in the district within which the award was made may enter an order confirming the award, unless the award is vacated, modified, or corrected).

[19] On January 27, 2015, UBSFS replied.  ECF No. 27.

[20] Padussis initially filed his papers as a "reply" to UBSFS's amended motion and then as a "response."  *See* ECF Nos. 13, 18. About a week later, Padussis filed his papers as a cross-motion and opposition; the Court will consider those papers, ECF No. 22, which are the same as those previously filed.

*Patten v. Signator Ins. Agency, Inc.*, 441 F.3d 230, 234 (4th Cir. 2006)).   The scope of a federal court's review "is among the narrowest known at law because to allow full scrutiny of such awards would frustrate the purpose of having arbitration at all--the quick resolution of disputes and the avoidance of the expense and delay associated with litigation."  *DataQuick*, 492 F.3d at 527 (*quoting Apex Plumbing Supply v. U.S. Supply Co.*, 142 F.3d 188, 193 (4th Cir. 1998)).[21]  Accordingly, federal courts are "'limited to determin[ing] whether the arbitrators did the job they were told to do--not whether they did it well, correctly, or reasonably, but simply whether they did it.'" *DataQuick*, 492 F.3d at 527 (*quoting Remmey*, 32 F.3d at 146).

The FAA states the statutory grounds on which a court may vacate, modify, or correct an arbitration award.  *See* 9 U.S.C. §§ 10 (vacatur), 11 (modification or correction); *Trademark Remodeling, Inc. v. Rhines*, No. PWG-11-1733, 2012 WL 3239916, at *1 (D. Md. Aug. 6, 2012).  Additionally, the Fourth Circuit recognizes two common law grounds for vacating an award: when "an award fails to draw its essence from the contract, or the award evidences a manifest disregard of the law."  *DataQuick*, 492 F.3d at 527 (*quoting Patten*, 441 F.3d at 234).  A federal

---

[21] *See also Remmey v. PaineWebber, Inc.*, 32 F.3d 143, 146 (4th Cir. 1994) (narrow scope of judicial review prevents arbitral proceedings from becoming mere "preliminary hearings" and supports finality of arbitral awards).

court may vacate an award *only* when the moving party has met its "heavy burden" of showing that one of the statutory or common law grounds has been met. *Id*. (emphasis added). "[B]ald faced allegations" are insufficient;[22] evidence of grounds for vacatur "must be direct, definite, and capable of demonstration rather than remote, uncertain or speculative."[23]

### 2.   Choice of Law

Preliminarily, the Court must determine what body of law controls this diversity action.[24]   In a federal diversity case,

---

[22] *Colonna v. Hanners*, No. 08:10-CV-1899-AW, 2011 WL 2175248, at *4 (D. Md. June 1, 2011) *aff'd*, 455 F. App'x 295 (4th Cir. 2011).

[23] *Consol. Coal Co. v. Local 1643, United Mine Workers of Am.*, 48 F.3d 125, 129 (4th Cir. 1995)(internal quotation marks and citation omitted); *Trademark Remodeling, Inc.*, 2012 WL 3239916, at *2.

[24] The parties' primarily rely on the FAA and federal case law interpreting the FAA.  Though noting that New Jersey's arbitration law, codified in the New Jersey Act of 2003, N.J.S.A. 2A:23B-1 *et seq.*, offers virtually identical grounds for vacatur as does the FAA, ECF No. 12 at 13 n.8, UBSFS relies on the FAA and cases interpreting its provisions in its arguments, *see generally* ECF Nos. 12, 28 at 1-16.  UBSFS relies on Maryland and New Jersey law in its arguments about whether Padussis's counsel has a statutory lien for attorneys' fees in connection with any recovery by Padussis.  ECF No. 28 at 17-20.

Padussis states that the Maryland Uniform Arbitration Act ("MUAA"), Md. Ann. Code, Cts & Jud. Proc. §§ 3-201 *et seq.*, applies "to the extent that the issues arbitrated flow from" the Team Agreement because the Team Agreement was executed in Maryland.  ECF No. 29 at 3.  However, because the MUAA is the state analogue to the FAA, Padussis relies on "the FAA and its controlling law." *Id*.  Padussis further states that "[d]isposition of this pending matter does not require any

14

the court must apply the choice of law rules of the forum state, Maryland. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941). "Maryland appellate courts have long recognized the ability of parties to specify in their contracts which state's law will apply." *Henry v. Gateway, Inc.*, 979 A.2d 287, 297 (Md. Ct. Spec. App. 2009). However, "'[a]bsent a choice-of-law provision in [a] contract, [Maryland] courts have applied the rule of *lex loci contractus* to matters regarding the validity and interpretation of contract provisions.'" *TIG Ins. Co. v. Monongahela Power Co.*, No. 2842, 2012 WL 6652756, at *9 (Md. Ct. Spec. App. Dec. 21, 2012) (*quoting Am. Motorists Ins. Co. v. ARTRA Grp., Inc.*, 338 Md. 560, 659 A.2d 1295, 1301 (Md. 1995)). "Under this principle, the law of the jurisdiction where the contract was made controls its validity and construction." *Id.* at *9 (internal quotation marks omitted). "[A] contract is made where the last act necessary to make the contract binding occurs." *Konover Prop. Trust, Inc. v. WHE Assocs., Inc.*, 142 Md. App. 476, 790 A.2d 720, 728 (Md. Ct. Spec. App.2002).

---

delving into state statutes under the narrow standard of review of the FAA; however it is important that the record accurately reflect the hybrid nature of this arbitration action under" New Jersey and Maryland law and the FAA. ECF No. 29 at 3.

However, the FAA--applicable to employment contracts[25]--
"supplies not simply a procedural framework applicable in
federal courts; it also calls for the application, in state as
well as federal courts, of federal substantive law regarding
arbitration." *Dewan v. Walia*, 544 F. App'x 240, 244 (4th Cir.
2013) (*quoting Preston v. Ferrer,* 552 U.S. 346, 349, 128 S. Ct.
978, 169 L.Ed.2d 917 (2008)). "[A]bsent a clear[] expression of
the parties' intent to invoke state arbitration law, [the Fourth
Circuit] will presume that the parties intended federal
arbitration law to govern." *Porter Hayden Co. v. Century Indem.
Co.*, 136 F.3d 380, 383 (4th Cir. 1998) (a choice-of-law
provision requiring the application of state substantive law is
not "an unequivocal expression of the parties' intent to invoke
[state], rather than federal, arbitration law"); *Rota-McLarty v.
Santander Consumer USA, Inc.*, 700 F.3d 690, 697 n.7 (4th Cir.
2012) ("Unquestionably, a contract's general choice-of-law
provision does not displace federal arbitration law if the
contract involves interstate commerce.").[26]

---

[25] *See, e.g., E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289,
122 S. Ct. 754, 761-62, 151 L. Ed. 2d 755 (2002); 9 U.S.C. § 2.

[26] *Cf. Dewan*, 544 F. App'x at 244 (district court erred in
applying the MUAA when the employment agreements at issue merely
called for disputes to be resolved by arbitration, and one of
the agreements required the application of Maryland substantive
law); *Dewan v. Walia, et al.*, Civil No. RDB-11-2195, ECF Nos. 1-
2, 1-3 (D. Md. August 9, 2011).

As stated above, the Note contained a choice-of-law provision requiring disputes to be governed by New Jersey arbitration law.  Pl. Ex. A, #A at 3.  However, the Team Agreement, under which Padussis counterclaimed, did not provide for the application of state arbitration law.  Def. Ex. 7 ¶ 17. Ostensibly, therefore, New Jersey arbitration law applies to issues arising out of the Note, and the FAA applies to issues arising out of the Team Agreement.  However, the statutory challenges raised by UBSFS are not neatly severable: UBSFS contests the manner in which FINRA appointed the arbitrators who decided issues under both agreements, not the merits of their decisions as to liability.[27]  In any event, New Jersey arbitration law and the FAA permit vacatur of an award when the arbitrators exceed their powers.  *See* 9 U.S.C. § 10(a)(4); N.J.S.A. 2A:23B-23a(4); *see also Liberty Mut. Ins. Co. v. Open MRI of Morris & Essex, L.P.*, 356 N.J. Super. 567, 581-82, 813 A.2d 621, 630-31 (Ch. Div. 2002) (New Jersey arbitration law was patterned after the FAA); *Yale Materials Handling Corp. v. White Storage & Retrieval Sys., Inc.*, 240 *N.J. Super*. 370, 375, 573 A.2d 484 (App. Div. 1990) ("New Jersey law [is] consonant with federal law which liberally enforces arbitration agreements.").

---

[27] As discussed more fully below, UBSFS argues that the panel erred in failing to award attorneys' fees in connection with Padussis's breach of the Note.  However, UBSFS raised that argument under the common law "manifest disregard" ground for vacatur, not under a statutory ground.  *See* ECF No. 12 at 21.

Because the outcome under New Jersey arbitration law and the FAA is the same, the Court will honor the parties' intent that the FAA govern resolution of UBSFS's statutory grounds for vacatur. *See Enter. Info. Mgmt., Inc. v. SuperLetter.com, Inc.*, No. CIV.A. DKC 13-2131, 2013 WL 5964563, at *4 (D. Md. Nov. 7, 2013) (unnecessary to resolve choice of law issues when the parties had not "identified a material divergence between potentially applicable law on any of the issues"); *see also Yale Materials Handling Corp.*, 240 *N.J. Super.* at 376 ("[F]ederal cases . . . are indisputedly . . . applicable by reason of the broad reach of the [FAA].").

3.   UBSFS's Motion

UBSFS argues that the award should be vacated under the FAA and because it evidences manifest disregard of the law.  UBSFS further argues that equity demands that the parties' respective awards be set off; each will be discussed.

a.   The FAA

Under the FAA, a court may vacate an arbitration award when "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."  9 U.S.C. § 10(a)(4).[28]

---

[28] The FAA also provides for vacatur when "the award was procured by corruption, fraud, or undue means," there is evidence of "partiality or corruption in the arbitrators," and "misbehavior"

Vacatur under § 10(a)(4) is only merited in the face of "extreme arbitral conduct,"[29] such as "when an arbitrator strays from interpretation and application of the agreement and effectively dispenses his own brand of industrial justice."[30]

UBSFS argues that the arbitrators exceeded their authority (1) because they were not selected in accordance with the parties' agreement to arbitrate, and (2) because UBSFS was deprived of a non-public arbitrator when the panel rendered its award.

i.   Panel Selection

Section 5 of the FAA requires that, when an agreement provides "for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed."  9 U.S.C. § 5; *see also Cargill Rice, Inc. v. Empresa Nicaraguense Dealimentos Basicos*, 25 F.3d 223, 225 (4th Cir. 1994)("Because arbitration is a matter of contract, parties may determine by contract the method under which arbitrators for their disputes will be appointed.")(internal quotation marks and citation omitted).  "Arbitration awards made by arbitrators not appointed

---

by an arbitrator in a manner prejudicing one of the parties.  9 U.S.C. § 10(a)(1)-(3).  UBSFS has not asserted those grounds.

[29] *Hall Street Assoc., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 586, 128 S. Ct. 1396, 1404-05, 170 L. Ed. 2d 254 (2008).

[30] *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671-72, 130 S. Ct. 1758, 1767-68, 176 L. Ed. 2d 605 (2010) (internal quotation marks, alteration, and citation omitted).

under the method provided in the parties' contract must be vacated." *Cargill Rice, Inc.*, 25 F.3d at 226.

Here, the parties agreed to arbitrate under the FINRA Code. *See, e.g.*, Pl. Ex. E at 1. Relevant rules provide that FINRA will send lists of potential arbitrators to the parties "within approximately 30 days after the last answer is due," and "[t]he ranked lists must be returned to [FINRA] no more than 20 days after the date upon which [FINRA] sent the lists to the parties." Rules 13403(c)(1), 13404(d).

UBSFS repeatedly asserts there is no evidence that FINRA mailed it the list of arbitrators. *See* ECF Nos. 12 at 8, 19; 28 at 9 n.9. Further, because it never received the list, FINRA rules providing for an opportunity to rank and strike arbitrators were not followed; thus, the arbitrators were not appointed in the manner prescribed by the parties' agreement. *See* ECF No. 12 at 15-17. Padussis argues that UBSFS has not shown that FINRA never mailed it the list, and Rule 13404(d) requires parties to return the lists within 20 days of mailing, not receipt. ECF No. 22-1 at 14.

FINRA has asserted that it sent UBSFS the list and the reminder. Pl. Ex. G, #B (October 15, 2013 letter decision from FINRA to the parties, at 4). In any case, UBSFS bears the burden of proving that FINRA's rules were not followed, not Padussis or FINRA. *DataQuick*, 492 F.3d at 527. Speculation

that FINRA never sent the list is insufficient to vacate an award. *Consol. Coal Co.*, 48 F.3d at 129. Under the narrow standard of judicial review afforded to arbitral proceedings, UBSFS has not met its heavy burden of showing that its failure to receive the list constitutes grounds for vacatur. *See DataQuick*, 492 F.3d at 527.[31]

Additionally, FINRA twice denied UBSFS's emergency motion for an extension of time to return the ranked list. *See* Pl. Ex. G, #B; *see also* Rule 13207(a),(c) (parties may agree to extend the deadline for returning arbitrator lists, or, for good cause, FINRA may extend any deadline in the Code). FINRA reasoned that UBSFS had not demonstrated good cause because FINRA had mailed the list and the reminder to UBSFS, and had not received any returned mail. Pl. Ex. G, #B (October 15, 2013 letter decision from FINRA to the parties, at 4). Although this Court may have reached a different result,[32] FINRA has the authority to

---

[31] Further, although Rule 13404(d)'s 20-day deadline for returning the ranked list clearly presumes that the parties received the list of potential arbitrators, vacating an award any time a party contends it never received the list (and did not return it) would effectively force FINRA--and other arbitral bodies--to send the lists by certified mail. This Court will not impose new--and financially burdensome--requirements upon FINRA.

[32] For the purpose of this motion, the Court need not decide whether failure to receive the list sent by regular mail amounts to good cause for an extension of time. Occasionally, however, mail is misplaced. Further, the Court notes the ambiguity of FINRA Rule 13403(c)(1), which states that arbitrator lists will

interpret its own rules.  *See* Rule 13412 (FINRA "may exercise discretionary authority and make any decision that is consistent with the purposes of the Code to facilitate the appointment of arbitrators and the resolution of arbitrations").  "Courts are not free to overturn an arbitral result because they would have reached a different conclusion [on] the same facts."  *Remmey,* 32 F.3d at 146.

Because UBSFS has not shown that FINRA failed to follow its rules in the selection process, it has not shown that the arbitrators *were not* selected in accordance with the parties' agreement.  *Cf. Cargill*, 25 F.3d at 226.  Accordingly, vacatur

---

be sent within 30 days of when the "last answer is due," but does not state whether that means answers to claims or counterclaims.  Not unreasonably, UBSFS had interpreted the rule as meaning that arbitrator lists would not be sent until it answered Padussis's counterclaim, which was due on September 19, 2013; thus, it had not expected the list to be sent in August. *See* Pl. Ex. G, #B, (August 16, 2013 email between counsel for the parties); *id.* (UBSFS's reply, at 2).  FINRA later informed the parties that Rule 13403(c)(1) requires its staff to "send[] arbitrator ranking lists after the last answer to the statement of claim or third party claim is due," and it "does not wait until answers are due for counterclaims and cross-claims." *Id.* (October 15, 2013 letter decision from FINRA to the parties, at n.1).  Had UBSFS known about FINRA's interpretation of the rule, it may sooner have inquired about the missing list.

is not merited on that basis.[33]

---

[33] UBSFS also argues that the panel's denial of its challenge to
the appointment process "does not change [its] analysis," *i.e.*,
its view that vacatur is merited, because "the arbitrator is not
to be the judge of his own authority."  ECF No. 16 at 26-27
(*citing Cargill*, 25 F.3d at 226; *Int'l Ass'n of Machinists &
Aerospace Workers, Progressive Lodge No. 1000 v. Gen. Elec. Co.*,
865 F.2d 902, 904 (7th Cir. 1989)).

*Cargill* noted, in dicta, that an arbitration panel's
determination of how its members should have been selected
"would not be entitled to deference because it would have
involved a determination of their own jurisdiction."  25 F.3d at
226 (*citing AT & T Technologies, Inc. v. Commc'ns Workers of
Am.*, 475 U.S. 643, 649, 106 S. Ct. 1415, 1419, 89 L. Ed. 2d 648
(1986); *Int'l Ass'n of Machinists*, 865 F.2d at 904).  However,
the cases on which the Fourth Circuit relied in support of the
above-mentioned proposition involved determinations whether the
parties had agreed to arbitrate the disputes at issue, not
whether panelists had been properly appointed.  *See AT & T
Technologies*, 475 U.S. at 1418-19 ("Under our decisions, whether
or not the company was bound to arbitrate, as well as what
issues it must arbitrate, is a matter to be determined by the
Court on the basis of the contract entered into by the
parties."); *Int'l Ass'n of Machinists*, 865 F.2d at 904 (whether
an issue is within the scope of the arbitration clause "is an
issue to be decided by the court asked to enforce the clause by
ordering arbitration, rather than by the arbitrator").

Unlike the "narrow" question of arbitrability, "'procedural
questions which grow out of [a] dispute and bear on its final
disposition . . . presumptively are for the arbitrator to
decide.'"  *Fantastic Sams Franchise Corp. v. FSRO Ass'n Ltd.*,
683 F.3d 18, 25 (1st Cir. 2012)(*quoting Howsam v. Dean Witter
Reynolds, Inc.*, 537 U.S. 79, 83, 123 S. Ct. 588, 591, 154 L. Ed.
2d 491 (2002)).  Procedural questions include whether
"conditions precedent to arbitrability have been fulfilled."
*Id.*  Here, UBSFS argued to the panel that FINRA Rules had not
been complied with because it had not received the list, Pl. Ex.
J at 16-17; in essence, UBSFS argued that a condition precedent-
-its receipt of the list--had not happened.  The panel denied
UBSFS's motion, apparently deciding that it had been properly
constituted notwithstanding UBSFS's failure to receive the list.
"The panel has the authority to interpret and determine the
applicability of all provisions under the Code," and "[s]uch

### ii.   Non-Public Arbitrator

When--as here--the dispute involves more than $100,000, the arbitration panel will include one non-public arbitrator and two public arbitrators.  FINRA Rules 13401(c), 13402(d).  UBSFS argues that Borchini had not been properly selected because it had been denied the opportunity to participate in the panel's selection, and because Borchini was not qualified as a non-public arbitrator when the panel rendered its award.  ECF No. 12 at 18.  Padussis contends that Borchini had been properly appointed.  ECF No. 22-1 at 15-18, 21.

When parties do not return the list of stricken and ranked arbitrators, FINRA, in developing its combined ranked list of arbitrators for each classification, will "proceed as though the party did not want to strike any arbitrator or have any preferences."  Rules 13404(d), 13405.  In other words, the opposing party's preferences become the "combined" list.  When a replacement is needed, FINRA may appoint the most highly-ranked available arbitrator of the required classification available

---

interpretations are *final and binding* upon the parties."  Rule 13413 (emphasis added); *Alliance Bernstein Inv. Research & Mgmt., Inc. v. Schaffran*, 445 F.3d 121, 127 (2d Cir. 2006)(Rule 13413 "clearly and unmistakably evinces an intent to submit any disputes over the interpretation of the Code rules to arbitration").  The panel's decision provides an alternate basis on which the Court may conclude--as it has--that UBSFS is not entitled to vacatur on the basis that it never received the list.

from the parties' (or, in this case, Padussis's) combined ranked list.  Rule 13411(a)-(b).

That is what happened here.  When Moore became unavailable, FINRA appointed Borchini from the combined list.  ECF No. 12 ¶ 29; Pl. Ex. I at 2.[34]  That UBSFS had not participated in the development of the combined list does not change the outcome; FINRA rules were followed, and under the parties' agreement, nothing more is required.  *See Bulko v. Morgan Stanley DW Inc.*, 450 F.3d 622, 626 (5th Cir. 2006)("In the absence of a specific agreement to the contrary, determining [arbitrator's] qualifications and eligibility is a matter left to [FINRA's precursor] the NASD.")(*citing Howsam*, 537 U.S. at 85); Pl. Ex. E at 1 (agreement providing for arbitration to be conducted under FINRA rules).

As to whether Borchini had been properly qualified as a non-public arbitrator, UBSFS asserts that Borchini must have worked in the industry within five years of the date the panel rendered its decision.  *See* ECF No. 12 at 18; *see also* Rule 13100(p)(1)(A) (defining non-public arbitrator as a person who

---

[34] Although FINRA erred in stating that Borchini had been ranked by both parties, *see* Pl. Ex. I at 2, FINRA selected Borchini from the combined list and not from its master list of potential arbitrators, *see* ECF No. 28 at 11 ("Padussis admits, as he must, that [Borchini] was selected from the original list . . . ."). Had Borchini's name not appeared on the combined list, FINRA would have needed the parties' consent for his appointment. *See* Rule 13411(c)-(d).

has been associated with a securities broker or dealer within the past five years). Although Rule 13100 is silent about the relevant date for determining the five-year period, FINRA relies on the date on which it generates the list of potential arbitrators. *See* Pl. Ex. I at 1. As noted above, FINRA has authority to interpret its rules "and make any decision that is consistent with the purposes of the Code to facilitate the appointment of arbitrators and the resolution of arbitrations." Rule 13412; *see Stone v. Bear, Stearns & Co.*, 872 F. Supp. 2d 435, 451 (E.D. Pa. 2012) *judgment entered*, No. 2:11-CV-5118, 2012 WL 1946970 (E.D. Pa. May 29, 2012) *and aff'd*, 538 F. App'x 169 (3d Cir. 2013)(deferring to FINRA's determination about an arbitrator's qualifications).

FINRA's interpretation of Rule 13100(p)(1)(A) is consistent with its role in appointing arbitrators and resolving arbitrations. Further, UBSFS's interpretation of Rule 13100 is unworkable: the date on which a panel would render its decision is likely unknown when appointments are made; thus, it would be impossible for FINRA to rely on that date when deciding who is qualified. Even the date on which appointments are made--which, under Rule 13406(d), occurs when FINRA informs the parties who will serve on the panel--is unsuitable because there are waiting periods associated with the parties' return of the ranked lists and FINRA's development of the combined list. Therefore, it is

entirely reasonable for FINRA to determine arbitrators'
qualifications at the start of the selection process.

Additionally, the cases relied on by UBSFS are
distinguishable (and non-binding on this Court).  Unlike *Cia De
Navegacion Omsil, S. A. v. Hugo Neu Corp.*, 359 F. Supp. 898, 899
(S.D.N.Y. 1973), where an arbitrator died after the conclusion
of hearings and the award was rendered by the remaining two
panelists, here, all three arbitrators participated in the
matter from start to finish.  In *El Vocero De Puerto Rico v.
Union De Periodistas*, 532 F. Supp. 13, 15 (D.P.R. 1981), the
parties agreed that one of three arbitrators would be selected
from candidates designated by the Secretary of Labor of Puerto
Rico.  The Court found that the parties had intended for that
arbitrator to be employed by the Department of Labor's
Conciliation and Arbitration Bureau; because the arbitrator
resigned from his position during the arbitration, the parties'
intent had not been honored and the award was invalid.  *Id*. at
16.  Here, however, the parties merely agreed to arbitrate under
FINRA rules; they did not bargain for a more-specific method of
selection.

FINRA properly exercised its discretion in determining
Borchini's qualifications, and there is no evidence that
Borchini "dispense[d] his own brand of industrial justice."
*Stolt-Nielsen S.A.*, 559 U.S. at 671; ECF No. 28 at 15 (UBSFS

27

makes no claim of bias, corruption, or misconduct by the arbitrators).  Vacatur under 9 U.S.C. § 10(a)(4) is not merited on the basis of Borchini's appointment or qualifications.  *See Bulko*, 450 F.3d at 626; *Stone v. Bear, Stearns & Co.*, 872 F. Supp. at 451.[35]  Accordingly, UBSFS has not proved any of the statutory grounds for vacatur.

b.  Manifest Disregard

UBSFS argues that the panelists manifestly disregarded the terms of the Note when it failed to award attorneys' fees.  ECF No. 12 at 22.  Padussis argues that UBSFS was not entitled to attorneys' fees because it failed to sufficiently identify the fees that it had incurred.  ECF Nos. 22-1 at 22-23; 29 at 3-4.

The Fourth Circuit has interpreted recent U.S. Supreme Court decisions "to mean that manifest disregard continues to

---

[35] Some Courts of Appeals have held that "trivial" instances of arbitrators exceeding their authority do not justify vacatur. *See Brentwood Med. Assocs. v. United Mine Workers of Am.*, 396 F.3d 237, 241-43 (3d Cir. 2005) (arbitrator's mistaken addition of language to collective bargaining agreement did not merit vacatur because outcome would have been the same); *R.J. O'Brien & Assocs., Inc. v. Pipkin*, 64 F.3d 257, 263 (7th Cir. 1995) (minor departures from the parties' agreement may not merit vacatur under § 10(a)(4)).  *Cf. ANR Coal Co. v. Cogentrix of N. Carolina, Inc.*, 173 F.3d 493, 500 (4th Cir. 1999) (arbitrator's failure to disclose trivial fact about an existing relationship did not merit vacatur under 9 U.S.C. § 2).  Here, expiration of the five-year period in which Borchini must have worked in the industry during the arbitration is similarly trivial because there is no evidence that he suddenly forgot everything he had learned from his prior work experience.  Buttressing this conclusion is FINRA's recent change to Rule 13100(p)(1)(A) eliminating the five-year time limit.

exist 'either as an independent ground for review or as a judicial gloss on the enumerated grounds for vacatur set forth at 9 U.S.C. § 10.'"  *Wachovia Sec., LLC v. Brand*, 671 F.3d 472, 483 (4th Cir. 2012)(*quoting Stolt-Nielsen S.A.*, 559 U.S. at 672 n.3).  Regardless of which understanding is correct, the Court has stated a two-part test for determining whether a party has shown manifest disregard: whether (1) "the applicable legal principle is clearly defined and not subject to reasonable debate," and (2) "the arbitrator[ ] refused to heed that legal principle."  *Wachovia Sec.*, 671 F.3d at 483; *see also Jones v. Dancel*, No. 14-2160, 2015 WL 4071609, at *6 (4th Cir. July 6, 2015); *Trademark Remodeling, Inc.*, 2012 WL 3239916, at *8. Assuming, *arguendo*, that UBSFS has established the existence of a clear legal principle--that under the applicable state substantive law,[36] the arbitrators were required to award attorneys' fees--UBSFS has not shown that the arbitrators refused to heed the legal principle.

Here, the Note provided for UBSFS's recovery of attorneys' fees "[i]n the event that any arbitration . . . is brought

---

[36] Although the Note provided for New Jersey arbitration law, it did not designate a particular state's substantive law.  *See* Pl. Ex. A, #A.  Because it is unclear from the record where the contract was made, the Court is unable to determine what state's law governs.  *Konover Prop. Trust, Inc.*, 142 Md. App. at 476, 790 A.2d at 728.  Nevertheless, because the Court finds that UBSFS's argument fails under the second requirement, it need not delve into the respective states' law.

against [Padussis] to collect" on the Note.  Pl. Ex. A, #A at 2.
However, UBSFS's fee petition failed to separately allocate its
fees under the Note and the Team Agreement that formed the basis
of Padussis's counterclaim or state the number of hours each
attorney had worked on the matter.  *See* Def. Ex. 26.  UBSFS
simply stated that it had incurred $297,809.90 in total fees,
and "[i]n the exercise of billing discretion," requested
$200,000 in attorneys' fees in connection with the Note.  *Id.* at
3.  UBSFS did not explain how it arrived at the $200,000 figure.
*Id.*

Because neither party requested an "explained decision,"[37]
the Court is unable to ascertain why the panel rejected UBSFS's
fee request.  However, "[a] court must defer to the arbitrators'
findings as to the appropriate amount of attorneys' fees."
*Wells Fargo Advisors, LLC v. Watts*, 540 F. App'x 229, 231 (4th
Cir. 2013).  Further, arbitration panels typically rely on the
"lodestar" fee calculation method used by federal courts.  *See*
*Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133,
141 (2d Cir. 2007).  "The starting point in the lodestar
calculation is multiplying the number of hours reasonably

---

[37] "Arbitration panels are not required to explain their
decisions."  *MCI Constructors, LLC v. City Of Greensboro*, 610
F.3d 849, 859 n.6 (4th Cir. 2010).  However, under FINRA Rule
13904(g), parties may request an award that states the general
reasons for the panel's decision.

expended by a reasonable hourly rate." *Saman v. LBDP, Inc.*, No. CIV.A. DKC 12-1083, 2013 WL 2949047, at *6 (D. Md. June 13, 2013) (*citing Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009)). In applying the lodestar method, courts consider 12 factors to determine if the award is reasonable.[38]

It is entirely possible that the panel concluded that UBSFS's undifferentiated fee request was unreasonable or insufficiently supported. *See Success Sys., Inc. v. Maddy Petroleum Equip., Inc.*, 316 F. Supp. 2d 93, 103 (D. Conn. 2004) (manifest disregard not shown when party presented arbitration panel with an undifferentiated attorneys' fee request). *Cf. Central W. Va. Energy, Inc. v. Bayer Cropscience LP*, 645 F.3d 267, 276 (4th Cir. 2011) (statutory vacatur inappropriate when arbitrator's decision is "rationally inferable" from the parties' submissions). Based on the current record, UBSFS has

---

[38] The factors are (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases. *Grissom v. The Mills Corp.*, 549 F.3d 313, 321 (4th Cir. 2008) (*citing Spell v. McDaniel*, 824 F.2d 1380, 1402 n. 18 (4th Cir. 1987)).

not shown that the panel refused to heed an applicable legal principle. *See Jones*, 2015 WL 4071609, at *6 ("[T]he manifest disregard standard is not an invitation to review the merits of the underlying arbitration, or to establish that the arbitrator misconstrued or misinterpreted the applicable law.")(internal quotation marks and citation omitted); *Wells Fargo Advisors, LLC*, 540 F. App'x at 231; *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 391 (2d Cir. 2003)(arbitral award should be upheld against manifest disregard challenge provided there is a "barely colorable justification" for the award). Accordingly, the award is not invalid on the basis of manifest disregard.

   c. Setoff

  Generally relying on principles of equity, UBSFS alternatively requests that the Court setoff the $932,887 UBSFS is required to pay Padussis against the $1,683,262.69 he owes it. ECF Nos. 12 at 23-25; 28 at 17. Padussis contends that the award does not permit offset, equity is not a basis for vacatur or modification of the award, and UBSFS's failure to seek setoff during arbitration bars this Court's consideration of the request. ECF Nos. 22-1 at 19, 23; 29 at 6.

  UBSFS principally relies on *STMicroelectronics, N.V. v. Credit Suisse Sec. (USA) LLC*, 648 F.3d 68 (2d Cir. 2011) to support its argument that this Court may award a setoff. In

*Credit Suisse*, arbitrators--ruling in favor of STMicroelectronics ("ST")--required ST to return certain failed securities to Credit Suisse upon the latter's payment of $400 million plus fees and costs. *Id.* at 73. Before the district court rendered judgment on the parties' cross-motions to enforce and vacate the award, Deutsche Bank bought some of the securities at issue for almost $75 million in cash. *Id.* Credit Suisse then moved to amend the judgment to offset its liability by that amount; the district court refused. *Id.* The Second Circuit agreed with Credit Suisse that "the district court should have treated the $75 million as a payment in partial satisfaction of the award" because "[i]t makes little sense to have Credit Suisse pay ST money that ST will immediately return to Credit Suisse." *Id.* at 82.

*Credit Suisse* is distinguishable. This is not a case where an award has been partially satisfied by a third party, thus reducing the amount owed to the sole prevailing party. Here, the panel awarded UBSFS and Padussis damages under different contracts. Pl. Ex. 1 at 6. Further, the panel denied any relief "not specifically addressed" in the award. *Id.* at 7. UBSFS has not provided--nor has the Court found--a case where arbitrators awarded damages to each party under different contracts, and a reviewing court effectively nullified one party's liability by awarding a setoff. Although UBSFS asserts

33

that it is not seeking modification of the award, *see* ECF No. 28 at 17, by asking the Court to setoff the awards, UBSFS's request is properly construed as a request to modify the award.

Under the FAA, courts may modify or correct an award when (1) "there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award," (2) "the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted," and (3) "the award is imperfect in matter of form not affecting the merits of the controversy." 9 U.S.C. § 11. "An award that is 'imperfect in matter of form,' . . . is one that suffers from a scrivener's error or that otherwise does not deliver on the arbitrator's stated purpose in granting relief." *Grain v. Trinity Health, Mercy Health Servs. Inc.*, 551 F.3d 374, 379 (6th Cir. 2008).

UBSFS argues that the panel could not have intended for it to pay Padussis in light of Padussis's potential inability to pay UBSFS. ECF No. 12 at 24. However, arbitrators have the authority to award a setoff when finding the parties mutually liable. *See, e.g., Qorvis Commc'ns, LLC v. Wilson*, 549 F.3d 303, 307 (4th Cir. 2008). An "arbitrator's failure to mention offsets in his ruling means that no offset was granted." *Int'l Union of Operating Eng'rs, Local 841 v. Murphy Co.*, 82 F.3d 185,

190 (7th Cir. 1996), *quoted in Burlington Ins. Co. v. Trygg-Hansa Ins. Co. AB*, 261 F. App'x 631, 633 (4th Cir. 2008).  Under the severely circumscribed standard of review afforded to arbitral decisions, UBSFS's speculation about the arbitrators' intent is insufficient to merit modification.  *See Remmey*, 32 F.3d at 146 ("Opening up arbitral awards to myriad legal challenges would eventually reduce arbitral proceedings to the status of preliminary hearings. Parties would cease to utilize a process that no longer had finality. To avoid this result, courts have resisted temptations to redo arbitral decisions.").[39]  Further, awarding a setoff would exceed this Court's authority to correct a mere "scrivener's error."  *Grain*, 551 F.3d at 379.  Because UBSFS has not shown that the award should be vacated or modified, the Court will deny its motion to vacate and grant Padussis's cross-motion to confirm.  *See Colonna v. Hanners*, No. 08:10-CV-1899-AW, 2011 WL 2175248, at *4 (D. Md. June 1, 2011) *aff'd*, 455 F. App'x 295 (4th Cir. 2011) (denial of motion to vacate merits granting of motion to confirm).[40]

---

[39] Because the Court will not modify the award, it need not address the parties' arguments about whether Padussis's counsel's assertion of an attorney's lien takes precedence over a setoff.

[40] Padussis asserts--in passing in his reply--that he is entitled to recover attorneys' fees and costs for having to oppose the motion to vacate and cross-move to confirm.  *See* ECF No. 29 at 4 (*citing* "C.J. 3-228").  Md. Ann. Code, Cts & Jud. Proc. § 3-228 permits a court to "award costs of the petition [to confirm an

B.   Motion to Seal

UBSFS moves to seal a certification by Francis Dee, Esq.
and attached exhibits (Pl. Ex's A-K) because they contain
confidential information, and asks the Court to order Padussis
to "remedy [his] improper filing of certain identified
confidential documents in clear violation of the parties'
agreements."   ECF Nos. 3-1 at 1-2; 27 at 1-2.[41]   Padussis opposes
the motion on the basis that it is overbroad because it includes
the hearing transcript.   ECF No. 16 at 1-3.

Under Local Rule 105.11, a motion to seal must provide
factual representations justifying sealing, and explain why
alternatives will not sufficiently protect the information. The
Court weighs the public's right of access against the parties'
rights to protect confidential information. *Winter v. Wells
Fargo Bank, N.A.*, 258 F.R.D. 118, 121-22 (D. Md. 2009); Local
Rule 105.11 (D. Md. 2014).

Here, the parties executed stipulations protecting the
confidentiality of documents disclosed during arbitration.   ECF

---

arbitration award], the subsequent proceedings, and
disbursements."   However, as discussed above, Maryland
arbitration law does not apply here. *See supra* section II.A.2.
Padussis's request will be denied without prejudice.   He will be
given 30 days to resubmit his request with legal and factual
support; if he fails to do so, the Court will close this case.

[41] UBSFS has not moved to seal Pl. Ex's 1 and 2, which contain
the arbitral award and an article about selecting arbitrators.
*See* ECF Nos. 12-1, 12-2.

36

No. 16-1.  UBSFS's exhibits contain arbitral pleadings, which include personal financial information, confidential business information, loan terms, non-competition and non-disclosure obligations, and information not generally publicly available. ECF No. 3-1 at 1-2.  Further, although FINRA permits parties to disclose details[42] of the proceeding, pleadings, exhibits, and the digital or stenographic record of the proceeding are not publicly available.  ECF Nos. 27-1 at 2; 30-2.  The arbitrators made clear that the proceedings were confidential.  ECF No. 27 at 3 n.1.  Because the Court has not revealed sensitive information in this opinion, the public right of access to judicial proceedings and the parties' private rights to confidentiality are balanced by sealing the exhibits but keeping this opinion unsealed.  Accordingly, the Court will grant UBSFS's motion to seal, and will order Padussis to seal Def. Ex's 1, 3, 5-7, 24, and 25.

---

[42] It is unclear whether this provision permits parties to disclose documents and transcripts, or simply allows parties to discuss the proceedings.  Out of an abundance of caution, the Court will assume that the latter, narrower, interpretation applies.

III. Conclusion

For the reasons stated above, UBSFS's motion to vacate will be denied, Padussis's motion to confirm will be granted, and UBSFS's motion to seal will be granted.

8/26/15

Date

William D. Quarles, Jr.
United States District Judge

38